IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARRY HAYMAN,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br><br>FLIR SYSTEMS, INC., JAMES J. CANNON, EARL R. LEWIS, JOHN D. CARTER, WILLIAM W. CROUCH, CATHERINE A. HALLIGAN, ANGUS L. MACDONALD, MICHAEL T. SMITH, CATHY A. STAUFFER, ROBERT S. TYRER, JOHN W. WOOD JR., and STEVEN E. WYNNE,<br><br>　　　　　　Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Harry Hayman ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by FLIR Systems, Inc. ("FLIR" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning FLIR and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against FLIR and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Teledyne Technologies Incorporated ("Teledyne") (the "Proposed Transaction").

2. On January 4, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Teledyne. Pursuant to the terms of the Merger Agreement the Company's shareholders will be entitled to receive $28.00 in cash and 0.0718 shares of Teledyne common stock for each share of FLIR common stock that they own (the "Merger Consideration").

3. On March 4, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC on Form S-4 (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against FLIR and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to FLIR shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of FLIR shares.

9. Defendant FLIR is incorporated under the laws of Delaware and has its principal executive offices located at 27700 SW Parkway Avenue, Wilsonville, Oregon.  The Company's common stock trades on the NASDAQ under the symbol "FLIR."

10. Defendant James J. Cannon ("Cannon") is and has been the President, Chief Executive Officer and a director of FLIR at all times during the relevant time period.

11. Defendant Earl R. Lewis ("Lewis") is and has been a director of FLIR at all times during the relevant time period.

12. Defendant Michael T. Smith ("Smith") is and has been a director of FLIR at all times during the relevant time period.

13. Defendant John D. Carter ("Carter") is and has been a director of FLIR at all times during the relevant time period.

14. Defendant William W. Crouch ("Crouch") is and has been a director of FLIR at all times during the relevant time period.

15. Defendant Catherine A. Halligan ("Halligan") is and has been a director of FLIR at all times during the relevant time period.

16. Defendant Angus L. Macdonald ("Macdonald") is and has been a director of FLIR at all times during the relevant time period.

17. Defendant Cathy A. Stauffer ("Stauffer") is and has been a director of FLIR at all times during the relevant time period.

18. Defendant Robert S. Tyrer ("Tyrer") is and has been a director of FLIR at all times during the relevant time period.

19. Defendant John W. Wood, Jr. ("Wood") is and has been a director of FLIR at all times during the relevant time period.

20. Defendant Steven E. Wynne ("Wynne") is and has been a director of FLIR at all times during the relevant time period.

21. Defendants Cannon, Lewis, Smith, Carter, Crouch, Halligan, Macdonald, Stauffer, Tyrer, Wood, and Wynne are collectively referred to herein as the "Individual Defendants."

22. The Individual Defendants, along with Defendant FLIR, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

23. FLIR designs, develops, markets, and distributes solutions that detect people, objects and substances that may not be perceived by human senses and improve the way people interact with the world around them. FLIR brings these innovative technologies into daily life in ways that help save lives and livelihoods. FLIR technologies include thermal imaging systems, visible-light imaging systems, locater systems, measurement and diagnostic systems, and advanced threat-detection solutions.

### The Company Announces the Proposed Transaction

24. On January 4, 2021, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> THOUSAND OAKS, Calif. and ARLINGTON, Va. – January 4, 2021 – Teledyne Technologies Incorporated (NYSE:TDY) ("Teledyne") and FLIR Systems, Inc. (NASDAQ:FLIR) ("FLIR") jointly announced today that they have entered into a definitive agreement under which Teledyne will acquire FLIR in a cash and stock transaction valued at approximately $8.0 billion.
>
> Under the terms of the agreement, FLIR stockholders will receive $28.00 per share in cash and 0.0718 shares of Teledyne common stock for each FLIR share, which implies a total purchase price of $56.00 per FLIR share based on Teledyne's 5-day volume weighted average price as of December 31, 2020. The transaction reflects a 40% premium for FLIR stockholders based on FLIR's 30-day volume weighted average price as of December 31, 2020.
>
> As part of the transaction, Teledyne has arranged a $4.5 billion 364-day credit commitment to fund the transaction and refinance certain existing debt. Teledyne expects to fund the transaction with permanent financing prior to closing. Net leverage at closing is expected to be approximately 4.0x adjusted pro forma EBITDA with leverage declining to less than 3.0x by the end of 2022.
>
> Teledyne expects the acquisition to be immediately accretive to earnings, excluding transaction costs and intangible asset amortization, and accretive to GAAP earnings in the first full calendar year following the acquisition.

"At the core of both our companies is proprietary sensor technologies. Our business models are also similar: we each provide sensors, cameras and sensor systems to our customers. However, our technologies and products are uniquely complementary with minimal overlap, having imaging sensors based on different semiconductor technologies for different wavelengths," said Robert Mehrabian, Executive Chairman of Teledyne. "For two decades, Teledyne has demonstrated its ability to compound earnings and cash flow consistently and predictably. Together with FLIR and an optimized capital structure, I am confident we shall continue delivering superior returns to our stockholders."

"FLIR's commitment to innovation spanning multiple sensing technologies has allowed our company to grow into the multi-billion-dollar company it is today," said Earl Lewis, Chairman of FLIR. "With our new partner's platform of complementary technologies, we will be able to continue this trajectory, providing our employees, customers and stockholders even more exciting momentum for growth. Our Board fully supports this transaction, which delivers immediate value and the opportunity to participate in the upside potential of the combined company." Jim Cannon, President and Chief Executive Officer of FLIR, said, "We could not be more excited to join forces with Teledyne through this value-creating transaction. Together, we will offer a uniquely complementary end-to-end portfolio of sensory technologies for all key domains and applications across a well-balanced, global customer base. We are pleased to be partnering with an organization that shares our focus on continuous innovation and operational excellence, and we look forward to working closely with the Teledyne team as we bring our two companies together to capitalize on the important opportunities ahead."

**Fourth Quarter Financial Results**

In a separate press release issued today, Teledyne announced improved preliminary financial results for the fourth quarter and full year 2020. The Teledyne press release is available on www.teledyne.com. FLIR noted today that it expects to meet or exceed the full year fiscal 2020 guidance it provided on October 30, 2020.

**Approvals and Timing**

The transaction, which has been approved by the boards of directors of both companies, is expected to close in the middle of 2021 subject to the receipt of required regulatory approvals, including expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, approvals of Teledyne and FLIR stockholders and other customary closing conditions.

**Advisors**
Evercore is acting as exclusive financial advisor and McGuireWoods LLP is

acting as legal advisor to Teledyne in connection with the transaction. Goldman Sachs & Co. LLC is acting as exclusive financial advisor and Hogan Lovells US LLP is acting as legal advisor to FLIR in connection with the transaction. Teledyne has entered into a 364-day senior unsecured bridge facility credit agreement with Bank of America as sole lead arranger and administrative agent.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

25.     On March 4, 2021, the Company authorized the filing of the Registration Statement with the SEC.  The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

26.     Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

27.     The Registration Statement contains projections prepared by the Company's and Teledyne's management concerning the Proposed Transaction, but fails to provide material information concerning such.

28.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-

and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

29. In order to make management's projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

30. Specifically, with respect both sets of projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including Unlevered Free Cash Flow.

31. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

---

financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Goldman Sachs' Financial Opinion**

32. The Registration Statement contains the financial analyses and opinion of Goldman Sachs & Co. LLC ("Goldman Sachs") concerning the Proposed Transaction, but fails to provide material information concerning such.

33. With respect to Goldman Sachs' *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying Goldman Sachs' use of the discount rate range of 6.5% to 9.0%; (ii) the terminal values of the Company; and (iii) the basis for Goldman Sachs' selection of an illustrative range of terminal year EV/EBITDA multiples of 12.0x to 15.0x.

34. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying Goldman Sachs' selection of a discount rate of 8.25%; and (ii) the basis for Goldman Sachs' selection of a range of NTM EBITDA multiples of 16.0x to 20.0x.

35. With respect to Goldman Sachs' *Selected Transactions Analysis*, the Registration Statement fails to disclose: (i) the individual multiples and metrics for each of the transactions observed in the analysis; and (ii) the basis for Goldman Sachs' selection of a range of last-twelve-months EBITDA multiples of 12.3x to 21.0x to value the Company.

36. With respect to Goldman Sachs' *Premia Analysis*, the Registration Statement fails to disclose the specific transactions used in Goldman Sachs' analysis, as well as the premium paid in each transaction.

37. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying

Goldman Sachs' use of a discount rate of 8.25%; and (ii) the basis for Goldman Sachs' use of a range of NTM EBITDA multiples of 28.0x to 34.0x.

38. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

39. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Sales Process

40. The Registration Statement contains information concerning the sales process leading up to the Proposed Transaction, but fails to disclose material information concerning such.

41. Specifically, the Registration Statement notes that the Company's Board "evaluated and considered a variety of potential strategic options, including strategic acquisitions, divestitures and business combination transactions, in light of industry developments, economic and market conditions and challenges facing participants in the industry." However the Registration Statement fails to disclose whether any parties entered into any mutual non-disclosure agreements with the Company that may contain "don't ask, don't

waive" ("DADW") provisions that would prevent the potential suitor from making a topping bid for the Company.

42. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

45. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46. Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

47. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

48. The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

49. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

50. The Defendants were, at the very least, negligent in preparing and reviewing the

Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

51. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

52. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

53. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54. The Individual Defendants acted as controlling persons of FLIR within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of FLIR, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including

the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

57. In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and

proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 23, 2021                                        Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway
Hewlett, New York 11557

Telephone: (516) 493-9780  
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*